UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>BRIAN HARTLINE<br><br>BARRY BEKKEDAM | Hon. C. Darnell Jones II<br><br><br>Criminal No. 2:14-00548(CDJ)<br><br><br><br>*DOCUMENT ELECTRONICALLY FILED* |

### BARRY BEKKEDAM'S MEMORANDUM IN OPPOSITION TO GOVERNMENT'S SEPTEMBER 14, 2015, MOTION TO QUASH SUBPOENAS *DUCES TECUM*

On July 20, 2015, Defendant Barry Bekkedam filed his pre-trial motions, including a *Motion to Dismiss Indictment Due to Government Misconduct or, in the Alternative, for a Kastigar Hearing* ("*Misconduct Motion*"). *See* ECF 40.[1] On September 3, 2015, this Court noticed a hearing for September 17, 2015, on a number of the pre-trial motions, including the *Misconduct Motion*, *see* ECF 57, allowing the parties to present evidence.

The *Misconduct Motion* focuses on the conduct of four individuals who made up the Government's prosecution team in 2012 – an Assistant United States Attorney ("Lead Prosecutor"), and three federal law enforcement agents (one from FBI, two from different arms of the Department of the Treasury) – with regard to an unconstitutional interview of Mr. Bekkedam's personal and business attorney (Larry Rovin), and subsequent actions. Not

---
[1] Full motion filed under seal.

1

surprisingly, Mr. Bekkedam issued hearing subpoenas to the agents for their testimony and for documents relevant to this matter, as well as to the United States Attorney's Office ("USAO") and the Department of Treasury for documents evidencing what, if any, approval process was undertaken before the illegal interview took place.

The Government appears to be seeking to quash the *duces tecum* – *i.e.*, the document-producing – aspect of those subpoenas, pursuant to Rules 16 and 17 of the Federal Rules of Criminal Procedure, arguing that they are "irrelevant ... [and] exempt from discovery[,]" not "admissible as evidence," and that Mr. Bekkedam is "merely fishing[.]" ECF 64, at 2-3. On the contrary, Mr Bekkedam is not broadly seeking these materials for trial. Rather, he is seeking these materials because they are relevant to a hearing this Court ordered, for the purpose of most efficiently conducting these proceedings. Rule 17 only permits the quashing or modifying of a subpoena "if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2). Setting aside the question of whether the USAO has standing to quash three (if not four) of these subpoenas,[2] and in light of the fact that it is not opposing the testimonial appearance of any of the three agents, it has made no showing that compliance with the *duces tecum* aspect of the subpoenas meets the Rule 17 standard.

---

[2] The United States has filed this motion to quash five subpoenas to four different agencies: the USAO for the EDPA; the FBI; the Special Inspector General for the Troubled Assets Relief Program ("SIG-TARP") of the Department of Treasury; and the Internal Revenue Service Criminal Investigations Division ("IRS-CID"), and the general counsel to the Department of Treasury. While the AUSA filing the present motion was gracious enough to identify "agency counsel" for each of the latter three, he informed undersigned counsel that his office was not in the position to accept service of their subpoenas. Of note, "agency counsel" has not added its voice to this *Motion to Quash*, casting doubt on whether USAO independently has standing to raise it for any of them. *See United States v. Vasquez*, 258 F.R.D. 68, 71 (E.D.N.Y. May 20, 2009) ("One important question that Courts have considered in deciding the issue of standing is "whether the subpoenaed party joins in the Government's motion to quash.").

## A. THE SUBPOENAS SEEK DOCUMENTS RELEVANT TO THE GOVERNMENT'S *CONSTITUTIONAL* VIOLATIONS; NOT (JUST) PRIVILEGE VIOLATIONS.

The Government has got it into its head, and repeatedly has tried to convince the Court, that the entirety of the *Misconduct Motion* is about a breach of the attorney-client privilege, and that both the motion should be denied and the document-producing aspects of the subpoenas be quashed because "Bekkedam has failed to identify a single privileged communication that Rovin revealed to investigators[.]" That is neither true nor does it accurately capture the substance of the motion.

### 1. The *Misconduct Motion* is *Not* Only About Breach of the Attorney-Client Privilege; It is About an Unconstitutional Invasion of the Attorney-Client – *Relationship.*

The *Misconduct Motion* sets forth that the wrong justifying relief is that the Government violated Mr. Bekkedam's Fifth Amendment right to due process and his Fifth Amendment right against Self-Incrimination – alleging conduct that was outrageous and shocking to the universal sense of justice.

As set forth in detail in Mr. Bekkedam's *Memorandum of Law in Support of Motion to Dismiss Indictment Due to Government Misconduct* ("*Misconduct Memorandum*" -- ECF 40-1[3]), the misconduct focuses on the actions of the Lead Prosecutor and his agents in connection to the nighttime, surprise, January 11, 2012, interview of attorney Larry Rovin – counsel to defendant Bekkedam himself and to Ballamor Capital Management,[4] of which Bekkedam was the sole owner. The three agents conducted the interrogation of Rovin, presumably at the Lead Prosecutor's behest.

---

[3] Full version filed under seal.
[4] Ballamor is referenced throughout the Government's Indictment of Mr. Bekkedam.

3

The *Misconduct Memorandum* explains that the outrageous conduct centers around not just on what took place during the interview, but also on the failures to put taint protections in place before and immediately after the interview, the use of tainted evidence, and the efforts by the Lead Prosecutor to create the false impression upon a federal judge that Mr. Rovin's immunized grand jury testimony would not invade privilege, omitting the fact that the Government already had done so. It is the sum of those actions, collectively, by which Mr. Bekkedam will show a due process violation as a result of:

- the government's objective awareness of an ongoing, personal attorney-client relationship between its informant and the defendant;
- deliberate intrusion into that relationship; and
- actual and substantial prejudice.

*United States v. Voigt*, 89 F.3d 1050, 1067 (3d Cir. 1996); *see also United States v. Singhal*, 800 F. Supp. 2d 1, 5 (D.D.C. 2011) (adopting three part *Voigt* test). Hence, whether the documentary evidence sought for this hearing is admissible *at this hearing* is a question of relevance – *i.e.*, whether it aids the Court in evaluating the three prongs of the *Voight* test. *See* Fed. R. Evid. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.") Therefore, documentary information that can show, *e.g.*, what steps the Lead Prosecutor took to get clearance for and otherwise informed his supervisors about this interview; what the agents knew about Mr. Rovin's relationship prior to interviewing him, whether they reviewed with the prosecutor in advance what to/not ask him; whether they were to have (and did have) the information vetted by a taint team before it was handed over to the Lead Prosecutor; and whether all of what Mr. Rovin told the agents actually made it into the Memorandum of Investigative Activity that the agent prepared after the interview – all has the likelihood of probity for the Court.

## 2. Contrary to the Government's Assertion, Mr. Bekkedam *Has* Identified Privileged Communications that Mr. Rovin Revealed to Investigators.

The Memorandum of Investigative Activity ("MOIA") that the SIG-TARP agent prepared regarding the January 11, 2012, surprise interview of Mr. Rovin is attached to this memorandum as *Exhibit A*, in the same format (hand numbering of the paragraphs) as it was presented to the court as *Exhibit 6* to Mr. Bekkedam's memorandum in support of the *Misconduct Motion*. Any fair reading of it will show or at least create the inference that *everything* Mr. Rovin knows about the issues the agents questioned him is the result of his special relationship. In numerous places pointed out in Bekkedam's original memorandum, this is abundantly clear, *i.e.*, that Rovin was revealing confidential client communications from Bekkedam, as well as legal advice Rovin gave Bekkedam in return:

By way of example, *as Bekkedam noted in his brief*, the Indictment speaks of Bekkedam's relationship with "G.L.," for whom he is alleged to have arranged a "circular" loan for the purpose of making NOVA Bank's assets look better than it really was. Part of this, according to the Indictment, was a *quid pro quo* whereby Bekkedam agreed to get his Ballamor clients to invest in G.L.'s "Banyon" fund, which was established for the purpose of buying into what unfortunately turned out later to be known as Florida attorney Scott Rothstein's $1.2 billion Ponzi scheme (for which Rothstein received 50 years in prison). The MOIA reflects:

> Rovin was questioned about what he knew *regarding the due diligence conducted by Bekkedam on behalf of Ballamor's clients* before he invested their funds with Banyan, [G.L.]'s firm.
> \*\*\*
> [Rovin described the due diligence he and his clients conducted and revealed that] there was some due diligence conducted, but very little. He believed that had the firm conducted additional due diligence, it may have covered their ass[.]
> \*\*\*

5

> [Rovin further] recalled that on several occasions, *he told Bekkedam that until they received the financial records from Szafranski, no additional client funds should be invested in Banyon.*

MOIA at ¶¶20-25 (emph. added). It is clear from the face of this text that what Mr. Rovin told Mr. Bekkedam about the Banyan funds and "Szfranski" pertained to the due diligence work that was being conducted – *something the agents affirmatively brought up with Rovin – not a topic about which he volunteered to speak* – leading to an inescapable conclusion that the agents *asked about* and Mr. Rovin *revealed to them* attorney-client communications. Indeed, we believe Mr. Rovin made clear to the agents that it was his responsibility, as counsel, to oversee this due diligence.

Accordingly, if we were to obtain notes from the agents that showed this was a question or topic they were planning to ask about, and/or that this topic was given to them or vetted by the Lead Prosecutor, such documents certainly could be a link in the chain of proof of a deliberate intrusion into the attorney client relationship – satisfying a prong of the test for a due process violation.

Moreover, as Bekkedam has shown in his memorandum supporting the *Misconduct Memorandum,* he has a good faith belief that such documents should exist and be in the hands of the USAO. Specifically, in his memorandum, Bekkedam attached *Exhibit 10* (attached hereto as *Exhibit B),* a "USAM 9-13.410 Attorney Subpoena" form, showing the careful process the same Lead Prosecutor used in order to get access to *a different lawyer* – one who represented NOVA Bank ("Attorney Swartz") – in the course of seeking a grand jury subpoena for him to produce documents and to testify:

> Prior to issuing this subpoena on July 24, 2012, the Lead Prosecutor first submitted a request to the Policy and Statutory Enforcement Unit, Office of Enforcement Operations, Criminal Division, to issue a subpoena to [D.S.], Esq., counsel for "NOVA Bank/Brian Hartline." *See* Request to

6

> Subpoena Attorney Swartz (July 24, 2012). Lead Prosecutor identified the attorney, the attorney's client, the client's target status, the relationship of the attorney to the defendant, the information sought and its relevance, and a description of why the information sought is not protected by the attorney-client privilege. The request was reviewed by a number of persons. The United States Attorney David Zane Memeger, personally authorized the request.

*Bekkedam's Misconduct Memorandum*, at 29 (citations omitted); *see also Exhibit B* (USA00026464-USA00026470).

Conveniently, now that the apparent differential treatment by the Government of Attorney Swartz in comparison to Attorney Rovin has come to light, the USAO has asserted that the Attorney Swartz document was produced in error. However, its mere existence independently shows the relevance (for the motions hearing) and need for production of any similar documentation pertaining to Attorney Rovin. For it begs the question of whether (and if so, why) Attorney Rovin was treated differently – and whether any similar documentation for Rovin exists -- *viz*:

- Why did the Lead Prosecutor seek to issue a grand jury subpoena to Swartz rather than (as the government did with Rovin), have three federal agents show up at the back door of his private residence on a cold January night, with no advance warning?

- The Lead Prosecutor identified "NOVA Bank/Brian Hartline" as Attorney Swartz's client in the process of getting approval to approach him. Did he similarly alert his supervisors as to Attorney Rovin's status?

- The approval form for Attorney Swartz says "the subpoena also calls for testimony regarding what [then-identified-as-target] Hartline, or other NOVA employee told the witness/attorney about the $5 million loan that was the subject of the attorney's opinion letter." *Exhibit B*, USA00026467. The agents interrogated Rovin about the

same loan. Did the Lead Prosecutor's supervisors know that they were going to do this? Why wasn't Rovin extended the same courtesy as Swartz to be given advance notice, and the opportunity such notice provides to consult with *his* client? Was this because the plan was for the agents to bully and threaten Rovin into giving up information about his client?

- The approval form for Attorney Swartz says it is permissible to ask him these questions because of the crime-fraud exception. *Exhibit B*, USA00026469. Was such a case made, and approval obtained, for Attorney Rovin?

These are just some of the questions the content of – and, more fundamentally, the existence of – such documents as they pertain to the surprise interrogation of Mr. Rovin – may answer. They could show (or not) that the Prosecution Team's treatment of Rovin *did* rise to the level of outrageous conduct, and that the invasion of the attorney-client relationship was deliberate.

Hence the relevance of such documents is beyond question, and producing them should prove neither unreasonable nor oppressive. (It should be no more difficult to locate and turn over than was the Attorney Swartz approval forms.) If approval documents exist for Rovin, and there is a privilege that applies, the Government should acknowledge their existence and produce a privilege log. Else, it needs to produce the document(s), or admit that none exist.[5]

### B. HAVING THE AGENTS COME TO COURT WITH THEIR NOTES – WHICH THEY HAD TO PRESERVE ANYWAY – IS NEITHER OPPRESSIVE NOR UNREASONABLE.

The Government has not opposed the appearance of the agents to testify at the hearing on the *Misconduct Motion*. Rather, it only seeks to prevent the agents from bringing documents

---

[5] Notably, the Government claims in its Opposition to the *Misconduct Motion* that it sought and received permission to subpoena Rovin's grand jury testimony, *see Opposition* at 5 (ECF 51) – but fails to make a similar assertion with respect to the January 11, 2012, interview of Rovin.

8

relevant to their testimony. Yet it is a standing rule within the Third Circuit that "the rough interview notes of F.B.I. agents should be kept and produced so that the trial court can determine whether the notes should be made available to the [defendant] under the rule of *Brady* ... or the Jencks Act[.]" *E.g., United States v. Vella*, 562 F.2d 275, 276 (3d Cir. 1977) ("To avoid future misunderstandings, we specifically adopt the precepts announced in *United States v. Harrison*, 173 U.S.App.D.C. 260, 524 F.2d 421 (1975), as the law in this circuit ... ."). Hence, since they had to hold on to these materials, anyway, and they are coming to court to testify, anyway, it is neither unreasonable nor oppressive for the law enforcement agents to produce the portions of their investigative files that pertain or relate to Mr. Rovin at or in advance of the hearing. Indeed, in this scenario, it would be the Court that was unduly burdened if, in the course of the testimony of the agents, reference was made to a document that the Government insisted they not bring.

## CONCLUSION

This Court has before it a number of motions, and has ruled on at least one without seeing the need for a hearing. The Court does see fit that a hearing be held on the *Misconduct Motion*. Common sense, and Rule 17, urge that such hearing be held once, with all potentially relevant evidence readily available. If the Court deems a document irrelevant to an examination, in particular, or to the hearing, in general, an objection can be sustained at that time.

The Government's *Motion to Quash Subpoenas Duces Tecum* should be denied.

September 15, 2015                             Respectfully submitted,

                                               /s/ Joel D. Schwartz
                                               Joel D. Schwartz
                                               Russell D. Duncan
                                               Allison Baker Shealy

9

jschwartz@shulmanrogers.com
rduncan@shulmanrogers.com
ashealy@shulmanrogers.com
Shulman Rogers Gandal Pordy Ecker, P.A.
12505 Park Potomac Ave., 6th Floor
Potomac, MD 20854
T: (301) 945-9240
F: (301) 230-2891

Michael J. Engle
m.engle@gpeff.com
Greenblatt Pierce Engle Funt Flores
123 South Broad St. Suite 2500
Philadelphia, PA 19109
(215) 985-4275
Fax: (888) 495-7377

*Attorneys for Barry Bekkedam*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>BRIAN HARTLINE<br>BARRY BEKKEDAM | Hon. C. Darnell Jones, II<br><br>CRIMINAL NO. 2:14-00548-CDJ<br><br>CERTIFICATE OF SERVICE |

I hereby certify that on September 15, 2015, the foregoing *Barry Bekkedam's Memorandum in Opposition to Government's September 14, 2015, Motion to Quash Subpoenas Duces Tecum* was filed electronically with the Case Management/Electronic Case Filing System ("CM/ECF") for the Federal Judiciary. Notice of this filing will be sent to all parties by operation of the CM/ECF system, and the parties to this action may access this filing through CM/ECF.

/s/ Joel D. Schwartz