IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 14-548 (CDJ) |
| BRIAN HARTLINE<br>BARRY BEKKEDAM | : | |

## DEFENDANT BARRY BEKKEDAM'S OPPOSITION TO
## MOTION OF HILARY MUSSER TO QUASH SUBPOENA *DUCES TECUM*

Government witness Hilary Musser is willing to assist the United States in prosecuting Barry Bekkedam – a man she once blamed for her own defaulting on a $3 million line of credit from NOVA Bank. Yet she wholesale resists production of categories of documents her counsel many years ago already organized in the course of civil litigation which she had joined as a plaintiff.

Specifically, the United States has identified Ms. Musser as a potential government witness, broadly describing the subject matter about which she would testify to encompass "her experience as a client of Ballamor, and how Barry Bekkedam facilitated her loan with NOVA" E.C.F. 83 (Government Trial Memorandum), at 14. Ms. Musser has met with the Government on at least four different occasions from 2011 to 2015 to volunteer information against Mr. Bekkedam.[1] One of those interviews, which resulted in a six-pages long Memorandum of Investigative Activity, was attended by her counsel – counsel from the same law firm who is representing her in this matter. At that interview, government agents covered a series of specific topics. As a result, undersigned counsel sought to narrow Ms. Musser's subpoena to those topics

---

[1] The Government has only produced Memoranda of Interview from three of those four meetings, but Ms. Musser has identified the fourth meeting in civil deposition testimony.

1

that were covered in the interview. *See* E.C.F. 105 (Musser Motion), at Exhibit B. Counsel for Ms. Musser responded that despite the narrowing of topics, the subpoena "remain[ed] overly broad and compliance would be unduly burdensome, requiring us to review more than six boxes of documents and more than 20,000 pages of electronic documents." *See Exhibit 1*, attached. In other words, instead of identifying which categories might be responsive and then performing (at least insofar as the electronic documents were concerned) targeted, computer driven key-word searches for *any* of the topics – not even those described, *e.g.*, as "Musser line of credit with NOVA Bank," "Banyon Income Fund" or "actions taken pertaining to her account with Ballamor" – Ms. Musser filed her motion to quash the entire subpoena.

### I. MS. MUSSER IS INCORRECT IN HER ASSERTION THAT A RULE 17(c) SUBPOENA *TO A THIRD PARTY SUCH AS SHE* MAY NOT BE USED BY MR. BEKKEDAM FOR THE PURPOSE OF PREPARING HIS DEFENSE.

Ms. Musser's reliance on Supreme Court precedent to advance her argument that Mr. Bekkedam may not use a Rule 17 subpoena to prepare his defense is misplaced. Specifically, she points to the statement in *Bowman Dairy Co. v. United States*, 341 U.S. 214. 220 (1951), "Rule 17(c) was not intended to provide an additional means of discovery." *See* ECF 105 (Musser Motion), at 3. Yet the purpose of the Court's statement in *Bowman* was the opposite of what Ms. Musser asserts. That is, the *Bowman* Court was explaining that in those instances when a defendant has access to a more specific but more limited discovery device such as Rule 16 of the Federal Rules of Criminal Procedure – which is available when seeking information *from the Government* –then that defendant cannot seek to avoid the limitations of Rule 16 by also serving the Government with a more broad Rule 17 subpoena. Hence the Court's use of the term "*additional* means." 314 U.S. at 220 (emphasis added).

However, the rules are not the same for Ms. Musser, a third party from whom Mr.

2

Bekkedam does not have other avenues of discovery. That is, in 1974, the Supreme Court, in *United States v. Nixon,* expressly left open the question of whether *Bowman*'s Rule 17(c) requirement that a subpoena seek both relevant *and* admissible documents applies "in its full vigor" when the subpoena is addressed, instead, to a third party. 418 U.S. 683, 609 n. 12 (1974). The lower federal courts have interpreted this distinction to mean that, "when a Rule 17(c) subpoena is served on a third party, as opposed to the government, the same rationale for limiting the scope of discoverable materials does not apply." *United States v. Nosal*, 291 F.R.D. 403, 407 (N.D. Cal. 2013). For instance:

- In *United States v. Tomison,* the district court concluded, "The notion that because Rule 16 provides for discovery, Rule 17(c) has no role in the discovery of documents can, of course, only apply to documents in the government's hands; accordingly, Rule 17(c) may well be a proper device for discovering documents in the hands of third parties." 969 F. Supp. 587, 593 n. 14 (E.D.Cal.1997).

- In *United States v. Nachamie*, the district court looked strictly at the language of Rule 17 to conclude, "Because the Rule states only that a court may quash a subpoena 'if compliance would be unreasonable or oppressive,' the judicial gloss that the material sought must be evidentiary—defined as relevant, admissible and specific—may be inappropriate in the context of a defense subpoena of documents from third parties." 91 F. Supp. 2d 552, 563 (S.D.N.Y. 2000).

- In *United States v. Tucker,* the district court not only held that Rule 17(c) is a different animal when directed to a third party, but that it is yet again distinct when issued by a defendant in a criminal case, concluding that applying the evidentiary requirement from *Nixon* to a third party subpoena could deny a defendant "the

3

reasonable opportunity to obtain material evidence that could be crucial to that cross-examination" and render his Sixth Amendment right to confrontation "meaningless." 249 F.R.D. 58, 67 (S.D.N.Y. 2008).

- And in *United States v. Rajaratnam*, the district court pointed out the illogic of holding criminal defendants to a higher standard than their civil counterparts, noting it "ironic that a defendant in a breach of contract case can call on the power of the courts to compel third-parties to produce any documents 'reasonably calculated to lead to the discovery of admissible evidence,' while a defendant on trial for his life or liberty does not even have the right to obtain documents 'material to his defense' from those same third-parties." 753 F. Supp. 2d 317, 320 (S.D.N.Y.2011).

For the *Nosal* court, whether a third party must comply with a criminal defendant's Rule 17(c) subpoena is reduced to "whether the subpoena was: (1) reasonable, construed using the general discovery notion of material to the defense; and (2) not unduly oppressive for the producing party to respond." 291 F.R.D. at 408. As the *Bowman* Court itself noted, "the plain words of the Rule are not to be ignored. They must be given their ordinary meaning to carry out the purpose of establishing a more liberal policy for the production, inspection and use of materials at the trial." 344 U.S. at 220.

II. **TO THE EXTENT THAT THE GOVERNMENT'S INVESTIGATION AND USE OF MS. MUSSER TO PROSECUTE ITS CASE AGAINST MR. BEKKEDAM IS RELEVANT, THEN THE DOCUMENTS SOUGHT FROM MS. MUSSER ARE BOTH RELEVANT AND POTENTIALLY ADMISSIBLE.**

As explained above, the Government has described Ms. Musser's trial testimony in very broad terms, and the discovery it has provided so far – as Ms. Musser's counsel knows by first-hand experience – shows that she was willing to talk to the Government about over a dozen topics. While the defense does not concede that any or all of these topics will be relevant to the

prosecution of Mr. Bekkedam, it is apparent that *the Government* believes they are -- else there would have been no reason to ask about them. In other words, it is the Government which has made "relevant" all of the topics about which Mr. Bekkedam now seeks documents. Therefore, Mr. Bekkedam cannot and should not have to narrow his subpoena unless and until the Government narrows the subject matter of Ms. Musser's direct examination. *See, e.g., In re Grand Jury Investigation*, 459 F.Supp. 1335, 1343 (E.D. Pa. 1976) (reasonableness of scope of time period covered by a subpoena *duces tecum* "depends upon the subject matter of the investigation").

As noted, Ms. Musser has exhibited no reluctance to being expansive in her efforts to help the Government prosecute Mr. Bekkedam. Indeed, she has not hidden her tremendous animus toward Mr. Bekkedam, and can hardly be considered a neutral witness. In a January 2012 deposition she gave in a case in which NOVA Bank was seeking to recover from Ms. Musser for a $3 million line of credit on which she had defaulted, she blamed Mr. Bekkedam:

> Let's call a spade a spade, ok? Barry Bekkedam used NOVA bank as his piggybank to borrow money for me, his client ... to then use either to pay my bills or then use it to put in his crappy investments which benefited people who are now [identities redacted], ... and his whole group of lackeys who made lots of money off the money I invested. So let's call a spade a spade.[2]

Bekkedam's actions, she alleged, caused her to downsize her lifestyle from one in which she "was burning, you know, close to $2 million a year" in living expenses,[3] to one in which she was forced to drive around in one of two used cars – a Bentley and an Aston Martin DB9 convertible[4] – and live in a $2.95 million, 6500-square-foot home on "half an acre, maybe" of property in

---

[2] Deposition of Hilary Grinker Musser, *NOVA Bank f/k/a NOVA Savings v. Musser*, Civ. No. 2010-32736 (Court of Common Pleas, Montgomery County, PA) (January 13, 2012), at 130.
[3] *Id.*, at 75.
[4] *Id.*, at 42-44.

5

West Palm Beach, Florida.[5] More, she has alleged under oath that Mr. Bekkedam made a verbal threat to her, of which, she says, "we have some confirmation of ... in writing."[6]

Therefore, any statements that Ms. Musser has made to or about Mr. Bekkedam that reveals her bias will be important cross examination material for the purpose of undermining her credibility. *E.g., United States v. Abel*, 469 U.S. 45 (1984) (Sixth Amendment Confrontation Clause renders it permissible to impeach prosecution witness by showing his bias toward defendant); *accord Davis v. Alaska,* 415 U.S. 308 (1974) (same). Likewise, because the topics about which she provided information to the Government – which are the ones we are seeking documents about – apparently may be covered in her direct examination, it will be necessary for Mr. Bekkedam to have available to him the entire story about these matters to make sure the jury has a complete picture of them. This principle is akin to the objectives of the "rule of completeness" as expressed in the common law and in Rule 106 of the Federal Rules of Evidence. *E.g., United States v. Soures,* 736 F.2d 87, 91 (3d Cir. 1997) ("Under Fed.R.Evid. 106, when a party introduces a writing or part thereof, the opponent may require the other party to introduce any other part or writing 'which ought in fairness to be considered contemporaneously with it.' Under this doctrine of completeness, a second writing may be required to be read if it is necessary to (1) explain the admitted portion, (2) place the admitted portion in context, (3) avoid misleading the trier of fact, or (4) insure a fair and impartial understanding.")

---

[5] *Id.,* at 18-19.
[6] Deposition of Hilary Grinker Musser, *NOVA Bank f/k/a NOVA Savings v. Musser,* Civ. No. 2010-32736 (Court of Common Pleas, Montgomery County, PA) (April 4, 2012), at 71-72.

6

III. **IT IS NEITHER UNREASONABLE NOR OPPRESSIVE FOR MS. MUSSER TO COMPLY WITH THE SUBPOENA – AS MOST OF THE DOCUMENTS ALREADY HAVE BEEN GATHERED BY HER OWN COUNSEL IN THE COURSE OF MS. MUSSER BEING A PARTY TO RELATED, PRIVATE CIVIL LITIGATION.**

Mr. Bekkedam first became aware of the cache of documents he seeks from reviewing deposition testimony given by Ms. Musser in *Razorback Funding, LLC, et al. v. Scott W. Rothstein, et al.* – civil litigation through which Ms. Musser sought to (and did) recover some of her investment in the Rothstein scheme. In that deposition, she testified that she no longer possessed the computers she used in the 2009 time period:

> But, I mean, we had somewhere on some computers, we checked everything. We printed out everything that we had that pertained to Ballamor and Barry Bekkedam. And they are with [her then counsel in the *NOVA* litigation] Michael Dubin in a big file box.[7]

After contacting Mr. Dubin, undersigned counsel was led to and contacted the current counsel for Ms. Musser, who confirmed that his firm "inherited" those materials.[8] That is to say, counsel possesses Ms. Musser's "big file box." Indeed, counsel has indicated that much of it is already in the format of electronically stored information. ECF 105, at 2. Therefore, given the overlapping nature of the *NOVA* litigation and the topics identified for the purpose of narrowing the current subpoena, it is fair to assume that her counsel already previously has organized, categorized and searched (if nothing else, for privilege review) most if not all of these materials. Hence, complying with Mr. Bekkedam's subpoena should be much less burdensome under these circumstances than normal. That is, Ms. Musser is far from starting from scratch with regard to this endeavor. *See. e.g., Fryer v. United States*, 207 F.2d 134, 136 (D.C. Cir. 1953) ("we hold that the written statements of defendant and witnesses fall within Rule 17(c)'s ambit[,]" and a

---

[7] Deposition of Hilary Musser, *Razorback Funding, LLC, et al. v. Scott W. Rothstein, et al.*, Civ. No. 09-062943 (Seventeenth Circuit Judicial Court, Broward County, FL) (May 19, 2011), at 176-178.
[8] Hence counsel graciously agreed to accept service.

7

subpoena for them is not unreasonable).

Finally, Ms. Musser asserts that the subpoena is unreasonable and oppressive because the defense "has already received sufficient information about these topics through the deposition transcript produced by the Government[ ]" – alluding to an April 4, 2012 deposition that Musser describes as "exceed[ing] 300 pages, [and] including nearly 70 exhibits[.]" E.C.F. 105, at 2, 5. Setting aside for the moment that it is neither the Supreme Court's standard under Rule 17(c) nor Ms. Musser's place to determine that Mr. Bekkedam "has ... sufficient information" by which to defend himself, while the Government has, in fact, provided the deposition transcript, it has not produced the corresponding exhibits.

Moreover, counsel for Ms. Musser himself has aided in rendering the contents of that deposition *in*sufficient. That is, during that deposition, Ms. Musser's counsel instructed her not to answer certain questions on the basis of accountant-client privilege. While that may have been appropriate for a Pennsylvania state court proceeding, there is no accountant-client privilege in federal court. *Couch v. United States*, 409 U.S. 322, 335 (1973) (holding "no confidential accountant-client privilege exists under federal law, and no state-created privilege has been recognized in federal cases."); *United States v. Antolini*, 271 Fed.Appx. 268, 271 n.1 (3d Cir., 2008) (following *Couch*). Indeed that same lawyer instructed Ms. Musser not to answer questions in the deposition on relevance grounds, including a question, to the effect of, how much money is she accusing Barry Bekkedam and others of defrauding her.[9] Accordingly, the limitations counsel placed on Ms. Musser's testimony further negates the purported completeness of the deposition transcript.

---

[9] Deposition of Hilary Grinker Musser, *NOVA Bank f/k/a NOVA Savings v. Musser*, Civ. No. 2010-32736 (Court of Common Pleas, Montgomery County, PA) (April 4, 2012), at 281-285.

## IV. CONCLUSION

It does not appear that the issue before the Court is whether Hilary Musser *can* comply (and do so relatively easily) with Mr. Bekkedam's subpoena. Rather, it appears that it is more that she *does not want to* comply. That is, she is willing to assist the Government – and even at least once pay private counsel to join her in meeting with agents and prosecutors – when it advances her personal interests in prosecuting and persecuting Mr. Bekkedam. She cannot deflect the other side of her responsibility as a witness by refusing to produce documents – in particular, her own statements – which she acknowledges are not only in her lawyer's possession – but already are boxed, scanned and organized – simply because that may impede her personal agenda.

Date: November 19, 2015

Respectfully submitted,

Joel D. Schwartz
Russell D. Duncan
Jacob S. Frenkel
Allison Baker Shealy
jschwartz@shulmanrogers.com
rduncan@shulmanrogers.com
jfrenkel@shulmanrogers.com
ashealy@shulmanrogers.com
Shulman Rogers Gandal Pordy Ecker, P.A.
12505 Park Potomac Ave., 6th Floor
Potomac, MD 20854
T: (301) 945-9240
F: (301) 230-2891

Michael J. Engle
m.engle@gpeff.com
Greenblatt Pierce Engle Funt Flores
123 South Broad St. Suite 2500
Philadelphia, PA 19109
(215) 985-4275
Fax: (888) 495-7377

*Attorneys for Barry Bekkedam*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this day, November 19, 2015, I caused the foregoing *Defendant Barry Bekkedam's Opposition to Motion of Hillary Musser to Quash Subpoena Duces Tecum* to be filed electronically with the Case Management/Electronic Case Filing System ("CM/ECF") for the Federal Judiciary. Notice of this filing will be sent to all parties by operation of the CM/ECF system, and the parties to this action may access this filing through CM/ECF.

/s/
Joel D. Schwartz